**Richard P. SWEATT, Respondent,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

No. 24982.

Missouri Court of Appeals, Southern District, Division One.

March 19, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dustin J. Allison, Asst. Atty. Gen., Jefferson City, for appellant.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, for respondent.

Before RAHMEYER, C.J., GARRISON and BARNEY, JJ.

PER CURIAM.

This appeal involves the revocation of Richard Sweatt's (Respondent) driving privileges for refusing a chemical test for intoxication under § 577.041.[1] After a hearing, the trial judge ordered reinstatement of Respondent's driving privileges. The Director of Revenue (Director) appeals. Director argues that the trial court erred in reinstating Respondent's driving privileges because he refused chemical testing and the arresting officer complied with applicable statutes. We agree and reverse the judgment.

On October 13, 2001, at approximately 1:13 a.m., Officer Arthur Ross of the Camdenton Police Department observed a vehicle driven by Respondent exceeding the speed limit. Officer Ross activated his emergency lights and pulled Respondent's vehicle over. Officer Ross smelled intoxicants on Respondent's breath and observed that his eyelids were droopy. Respondent initially denied that he had been drinking but then admitted to having a couple of beers several hours ago.

Officer Ross administered several field sobriety tests to Respondent. He asked Respondent to attempt the one-leg stand. Respondent swayed while balancing, used arms for balance, hopped on one foot, and put his foot down. Officer Ross requested Respondent to walk and turn following his directions. Respondent could not keep his balance while listening to the instructions.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

He attempted the walk and turn before the instructions were finished. While attempting to perform the walk and turn, Respondent failed to touch heel-to-toe on many of the steps. Officer Ross also administered the horizontal gaze nystagmus. He observed that there was no smooth pursuit in either eye, and there was distinct nystagmus at maximum deviation in both eyes. Respondent complied with Officer Ross's request to give a sample of his breath using a portable breathalyzer test. The test results showed a blood alcohol content of .175 %. Following the field sobriety tests, Officer Ross arrested Respondent for driving while intoxicated and transported him to the Camden County Sheriff's Department.

At the Camden County Sheriff's Department, Officer Ross read Respondent the implied consent form. He agreed to submit to a breathalyzer test but was unable to finish the test. Respondent testified at the hearing that after he was unable to finish the breathalyzer test Officer Ross asked him if he wanted a blood test. Respondent replied to Officer Ross's request: "Well, not if I don't have to, because I don't like needles better than anyone else." Respondent volunteered to try the breathalyzer test for a second time and, for the second time, he was unable to finish. Officer Ross recorded this as a refusal. He also recorded Respondent as having refused a blood test. At the hearing, Respondent testified that he suffered from high blood pressure, shortness of breath, and anxiety attacks, which prevented him from being able to perform the breathalyzer test.

■■■ "Appellate review of judgments relating to revocation of driving privileges for failure to take a chemical test is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976)." *Zimmerman v. Director of Revenue,* 72 S.W.3d 634, 636 (Mo.

App.2002). The judgment must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence, or it erroneously declares or applies the law. *Baldridge v. Director of Revenue,* 82 S.W.3d 212, 219 (Mo.App.2002). "This court views the evidence, and all reasonable inferences therefrom, in the light most favorable to the judgment and disregards all contrary evidence and inferences." *Id.*

■■■ "In license revocation cases, a trial court is not free to disregard unequivocal and uncontradicted evidence that supports Director's contentions." *Zimmerman,* 72 S.W.3d at 636. "Moreover, our standard of review does not permit us to disregard uncontroverted evidence supporting the fact that all elements of Director's case were met." *Id.*

■■■ When reviewing the revocation of a driver's license for a refusal to submit to chemical testing, the trial court shall determine (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe the person was driving while intoxicated: and (3) whether the person refused to submit to testing. § 577.041.4; *Snow v. Director of Revenue,* 935 S.W.2d 383, 385 (Mo.App. 1996). If the trial court finds that one of these criteria has not been met, the court must order reinstatement of the driving privileges. § 577.041.5.

Here, the trial court found Director failed to meet his burden as to the third element, that is, the trial court found that Respondent did not knowingly and intentionally refuse to take a requested test for blood analysis. Thus, the only issue for our review is whether Director made a prima facie showing that Respondent refused chemical testing. Director's sole point alleges the trial court erred in reinstating Respondent's driving privileges be-

cause Respondent admitted at trial to declining a blood test.

■ Section 577.020.1, the implied consent law, provides that "[a]ny person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to ... a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood," if that person was arrested on reasonable grounds to believe that he was driving a motor vehicle while intoxicated. Section 577.020.2 provides that "[t]he implied consent to submit to the chemical tests listed ... shall be limited to not more than two such tests arising from the same arrest, incident or charge." Further, "[a]n arrested person does not have his choice of which statutory test he will take." *Borgen v. Director of Revenue*, 877 S.W.2d 172, 175 (Mo.App.1994).

Section 577.041.1 provides that "[i]f a person under arrest ... refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given...."

■ It is well settled that a "refusal" is the intentional failure to do what is necessary so that a chemical test of a driver's blood alcohol content can be performed. *Baldridge*, 82 S.W.3d at 220; *Snow*, 935 S.W.2d at 385; *Borgen*, 877 S.W.2d at 175; *Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975). "Whether the declination is accomplished by verbally saying, 'I refuse', or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference." *Id.*

In this case, Respondent was unable to complete the first breathalyzer test. The officer then afforded Respondent the opportunity to take a blood test. Respondent testified at trial that the officer asked him if he wanted a blood test. Respondent argues that this was not a request but rather an offer to take a blood test. The use of the word "want" in the officer's request is of no consequence. *Zimmerman*, 72 S.W.3d at 637.[2] A qualified or conditional assent is a refusal under the statute. *Spradling*, 528 S.W.2d at 766. Respondent's reply to the officer's request to submit to a blood test was a refusal under the statute. In *Borgen*, the court held that the driver refused a blood test by stating he would not go to a hospital or doctor. 877 S.W.2d at 175. The court held that this statement was not an "affirmative response." *Id.* Likewise, Respondent's statement to the officer in this case was not an affirmative response.

Respondent argues he would not have volunteered to try the breathalyzer test again had he known that his license would be revoked for refusing the blood test. He contends that he did not understand that failure to submit to a blood test would result in revocation of his driver's license.

■ Section 577.041.1 provides that "[t]he request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test." Here, the record shows that Officer Ross read Respondent the implied consent form warnings from Department of Revenue Form 2389 prior to asking him to submit to a chemical test. Form 2389 reads:

---

**2.** In *Zimmerman*, this Court said that "Driver is not allowed to condition the taking of the test on the verbal direction that [officer] 'wanted' him to take it." *Id.*

You are under arrest for driving while intoxicated. To determine the alcohol-drug content of your blood, I am requesting you submit to a chemical test of your breath. If you refuse to take the test(s), your driver's license shall immediately be revoked for one year. Evidence of your refusal to take the test(s) may be used against you in prosecution in a court of law. Having been informed of the reasons for requesting the test(s), will you take the test(s)?

The statute does not require that the implied consent form be read before each request to submit to a chemical test. Officer Ross gave proper notice to Respondent that his driver's license would be revoked if he failed to comply with the officer's request for chemical testing.

The trial court's determination is not supported by substantial evidence. Respondent refused to submit to a blood test after he could not properly perform the breathalyzer test. Therefore, his driving privileges should not have been reinstated. The judgment is reversed, and the cause is remanded to the trial court to enter a judgment consistent with this opinion.