Ethel S. SMOCK, Petitioner–Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.**

No. 25405.

Missouri Court of Appeals, Southern District, Division One.

March 15, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Appellant.

No Appearance by Respondent.

PHILLIP R. GARRISON, Judge.

The Director of Revenue ("the Director") appeals from the trial court's judgment reinstating the driving privileges of Ethel S. Smock ("Respondent") following the one-year suspension of those privileges for failure to submit to a chemical test for intoxication. We reverse the judgment and remand for reinstatement of the suspension.[1]

---

1. Respondent has not favored us with a brief, leaving us to resolve the issues raised without the benefit of her argument. *See Scheble v. Missouri Clean Water Comm'n*, 734 S.W.2d 541, 545 (Mo.App. E.D.1987) ("[f]ailure of a respondent to file a brief is an imposition on this court and leaves us dependent upon [the appellant's] presentation and our own research. However, because no penalty is imposed by statute or rule, we will proceed to determine the case on its merits.").

The evidence presented to the trial court consisted entirely of records presented by the Director. The portions of those records with which we have been provided indicate the following: early in the morning of August 4, 2002, Trooper Mark Mason ("Mason") of the Missouri State Highway Patrol stopped a vehicle driven by Respondent on suspicion of speeding. When Mason approached Respondent, he noted a strong smell of intoxicants and asked her to perform several field sobriety tests, all of which she failed. Respondent refused to submit to a portable breathalyzer test.

Mason arrested Respondent for driving while intoxicated and transported her to the Barton County jail, where Mason informed her of her Miranda rights, and also read the mandated implied consent notification. Respondent consented to a chemical breath test, but she was unable or unwilling to provide a breath sample sufficient to register as a valid test on the machine. During this aborted test, Mason observed on the machine's digital display a blood alcohol content ("BAC") reading of .137 percent. Mason pressed a button on the machine labeled "sample control override" in order to generate a printout reflecting a BAC of .137. Mason then "gave [Respondent] an opportunity" to complete another breath test on a different machine, but Respondent again was unable or unwilling to submit a breath sample sufficient to register as a valid test.

Mason then read the implied consent notification to Respondent a second time and requested she submit to a blood test. Respondent refused. As a result, the Director, on August 4, 2002, informed Respondent that her driving privileges would be revoked for one year, pursuant to Section 577.041.1,[2] for refusing to submit to a chemical test for intoxication. Respondent filed a petition for judicial review pursuant to Section 577.041.4, a hearing on which was held on December 10, 2002.

During the hearing on Respondent's petition, the parties stipulated that Respondent had been arrested for driving while intoxicated and that Mason had reasonable grounds to believe she was, in fact, driving while intoxicated. Respondent argued, however, that Mason improperly deemed her to have refused a chemical test, in that she submitted a breath sample sufficient to register a BAC reading of .137 percent, albeit in the course of an aborted test, and she was not required to submit to a blood test after what she characterized as a valid test of her breath.

At the conclusion of the hearing, the trial court found that Respondent had not refused a test as such refusal is defined by Section 577.041.1 and held, *sua sponte,* that Section 577.020.2, which provides for a driver's implied consent to "not more than two" chemical tests for intoxication, was "unconstitutionally vague and ambiguous[.]" The trial court set aside the suspension of Respondent's driving privileges. The Director appeals.

In her sole point on appeal, the Director contends the trial court erred in setting aside the suspension of Respondent's driving privileges for refusing to submit to a chemical test because, quite simply, the Director proved at trial that Respondent was arrested, that Mason had reasonable grounds to believe Respondent was driving while intoxicated, and that she refused to submit to a blood test. We agree.

■ In reviewing matters tried without a jury, we affirm the trial court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law.

---

**2.** References to statutes are to RSMo (2000) unless otherwise indicated.

*Burleson v. Director of Revenue,* 92 S.W.3d 218, 220 (Mo.App. S.D.2002) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).[3] In cases involving the revocation of a person's driving privileges pursuant to Section 577.041, only three issues are properly to be considered by the trial court—(1) whether the person was arrested, (2) whether the arresting officer had reasonable grounds to believe the person was driving a motor vehicle while intoxicated, and (3) whether the person refused to submit to a chemical test for intoxication. *Burleson* at 220–21; *Mansfield v. Director of Revenue,* 82 S.W.3d 225, 226 (Mo.App. W.D.2002); Section 577.041(4).

As indicated above, the parties stipulated that Respondent was arrested and that Mason had reasonable grounds to believe Respondent was driving while intoxicated. Thus, the only issue for resolution by the trial court was whether Respondent refused a chemical test for intoxication. Concerning Mason's request that Respondent submit to a blood test when she was unable to provide a breath sample sufficient to register as a valid test on either of two machines, Respondent admitted, and the trial court found, that she refused that test.

The trial court, however, found that Respondent did not refuse to submit to a breath test and that, in fact, her first attempt to blow into the machine constituted a "valid" test, despite the machine's inability to register the test as such. According to the trial court, Section 577.020.2 is "unconstitutionally vague and ambiguous as to whether a second test is required, even if requested by the law enforcement officer, after a valid sample is obtained and a valid test is made of said sample."

Section 577.020.1 provides that any person operating a motor vehicle in Missouri is deemed to consent to a "chemical test or tests of the person's breath, blood, saliva or urine." Section 577.020.2 states that the "implied consent to submit to the chemical tests listed in subsection 1 ... shall be limited to not more than two such tests arising from the same arrest, incident or charge." It is this provision of Section 577.020 that the trial court held to be unconstitutionally vague and ambiguous.

 Preliminarily, we note that the Missouri Constitution grants our supreme court exclusive jurisdiction of appeals involving the constitutionality of a statute. Mo. Const. art. V, § 3. The presence "of a constitutional issue deprives this court of jurisdiction, however, only if the constitutional issue is real and substantial rather than merely colorable." *State v. Stone,* 926 S.W.2d 895, 898 (Mo.App. W.D.1996) (citing *State v. Prowell,* 834 S.W.2d 852, 854 (Mo.App. E.D.1992)). A constitutional issue is:

> substantial when, upon preliminary inquiry, the [assertion of unconstitutionality] discloses a contested matter of right, involving some fair doubt and reasonable room for controversy; but, if such preliminary inquiry discloses the [assertion] is so obviously unsubstantial and insufficient, either in fact or law, as to be plainly without merit and a mere pretense, the [issue] may be deemed merely colorable.

*Matter of Estate of Potashnick,* 841 S.W.2d 714, 718 (Mo.App. E.D.1992) (quoting *Kansas City Star Co. v. Shields,* 771 S.W.2d 101, 103 (Mo.App. W.D.1989)). Because we determine that the trial court's finding regarding the constitutionality of

---

**3.** *Murphy* interpreted the provisions of a former version of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d). Citations to rules are to Missouri Rules of Civil Procedure (2003) unless otherwise indicated.

Section 577.020.2 is merely colorable, this court has jurisdiction. *See Stone* at 898.

█ Notwithstanding the trial court's misgivings concerning the implied consent law, the fact that it allows an officer to request more than one chemical test of a suspected intoxicated driver is beyond serious dispute. *See Sweatt v. Director of Revenue,* 98 S.W.3d 926, 929 (Mo.App. S.D.2003); *Baldridge v. Director of Revenue,* 82 S.W.3d 212, 220 (Mo.App. W.D. 2002); *Wilson v. Director of Revenue,* 35 S.W.3d 923, 927 (Mo.App. W.D.2001); *Duffy v. Director of Revenue,* 966 S.W.2d 372, 381–82 (Mo.App. W.D.1998); *Baker v. Director of Revenue,* 945 S.W.2d 589, 590 (Mo.App. E.D.1997); *Snow v. Director of Revenue,* 935 S.W.2d 383, 386 (Mo.App. S.D.1996); *Borgen v. Director of Revenue,* 877 S.W.2d 172, 175 (Mo.App. W.D.1994); *Kiso v. King,* 691 S.W.2d 374, 376 (Mo. App. W.D.1985). In no Missouri case, and certainly not in the language of Section 577.020.2, is there to be found a caveat supporting a trial court's determination that an officer who requests a second statutorily allowed test following an initial "valid" test does so outside the bounds of the implied consent statute. Indeed, quite the opposite is true, as the court of appeals has on multiple occasions held that a driver who produced a requested breath sample can, under Section 577.020.2, be required to submit to a second chemical test or have his or her driving privileges suspended for refusing such a test.[4] *See Baldridge* at 220; *Wilson* at 927; *Duffy* at 381.

No case, however, more squarely addresses the facts and issue of this case than *Snow.* In that case, the same trial court whose judgment we review here reversed the suspension of a driver's license for refusal to submit to a second chemical test when the driver was either unable or unwilling to produce a breath sample sufficient to "generate a final reading and printout" on the testing machine. *Id* at 384–85. The officer in *Snow* made a notation that sometime during the aborted test the digital readout on the breathalyzer machine read ".20" percent BAC, but requested, as did Mason in the instant case, that the driver submit to a blood test. *Id.* The driver, as did Respondent, refused. *Id* at 384. The trial court, as it did here, held that the driver did not refuse a chemical test under Section 577.041.1 because she "did make an attempt and did, apparently, successfully blow to the point that the machine could read it; and that reading was observed by the officer." *Id.*

We reversed the judgment of the trial court in *Snow,* holding that "[b]ecause [the officer] did not request [the driver] to submit to more than two tests, we need not determine whether [the driver's] failure to blow hard enough into the [machine] constituted a refusal." *Id.* at 386. We noted that Section 577.020 "allows an officer to request more than one of the statutory tests" and that the driver in *Snow* "[did] not dispute that she refused the blood test when requested." *Id.* We concluded that

> [t]he trial court's determination erroneously applied the law. [The driver] refused to submit to a blood test after she either did not or could not properly perform the breathalyzer test. Therefore, her driving privileges should not have been reinstated. The judgment is reversed and the cause is remanded to the trial court to enter a new judgment consistent with this opinion.

*Id.*

█ We cannot come to a different conclusion in this case than we did in *Snow*

---

4. It has been previously established that more than one attempt to complete a requested breath test constitutes one test, for the purpose of determining if or when an officer has requested no more than two tests. *See, e.g., Baldridge* at 215–222.

simply because the trial court, when faced with the same issue again in the instant case, couched its misgivings concerning Section 577.020 in terms of unconstitutional vagueness. The statute clearly allows for two chemical tests of a driver. The legislature has chosen, for whatever reason, not to include in the implied consent provision any qualification based upon whether a driver submits to and is successful in completing an initial test, only to refuse a request for a second test.

The trial court having misapplied the law in its judgment, the judgment must be, and is hereby, reversed and the case is remanded for an entry of judgment reinstating the suspension of Respondent's driving privileges. *See Burleson* at 222.

BARNEY, P.J., and PREWITT, J., concur.