James **GIESLER**, Respondent,

v.

**DIRECTOR OF REVENUE**, Appellant.

No. ED 83086.

Missouri Court of Appeals, Eastern District, Southern Division.

July 20, 2004.

Robert E. Carlson, Jefferson City, MO, for Appellant.

Robert David Huelskamp, Ste. Genevieve, MO, for Respondent.

SHERRI B. SULLIVAN, C.J.

*Introduction*

The Director of Revenue (Director) appeals from a trial court judgment reinstating the driving privileges of James Giesler (Driver) after the Director revoked them because Driver refused to submit to a urine test when suspected of driving while intoxicated. We reverse and remand.

*Factual and Procedural Background*

While on duty the evening of October 11, 2001, Joe Pitts (Pitts), a patrolman with the Ste. Genevieve Police Department, received a radio transmission from a fellow officer requesting Pitts to be on the lookout for a motor vehicle that left the scene of an accident at a McDonald's restaurant. The officer described the vehicle as a red Dodge and provided a license plate number. Shortly thereafter, Pitts saw a vehicle matching the description with the license plate number, and he pulled the vehicle over.

Driver, who was eighteen years old at the time, was the driver of the vehicle and another male was a passenger. Pitts advised Driver to turn off the car and to step to the rear of the vehicle, which he did. As Driver was walking to the rear of the vehicle, Pitts noticed that he was unsure of himself and had to use the vehicle to steady himself a little bit. Pitts also smelled a very minor amount of alcohol coming from Driver. Pitts advised Driver of the reason for his pulling the vehicle over and asked Driver if he had had any intoxicating beverage that evening. Driver stated that he had had one beer.

The passenger was not obeying Pitts's orders, getting out of the vehicle, walking away from the vehicle and down a hill a little bit so Pitts handcuffed Driver, placed him in his patrol car, and then secured the passenger. Shortly thereafter, two other officers arrived at the scene. The passenger became extremely physically violent, fighting with the other officers so Pitts drove Driver to the sheriff's department for a more controlled environment in which to perform field sobriety tests. Driver was cooperative.

At the sheriff's department, Pitts removed the handcuffs from Driver and had Driver perform three field sobriety tests. The first test was the horizontal gaze nystagmus test, which driver failed because he had "distinct nystagmus at maximum deviation" and no smooth pursuit. The next test was the one-leg stand, which Driver performed four times and was only able to keep his foot up for a maximum of two seconds of the required thirty seconds. The final test was the walk-and-turn, during which Driver did not take any steps heel-to-toe, as required.

Based on Driver's performance on the field sobriety tests and the information that Driver had told Pitts, Pitts believed he had probable cause to think that Driver was driving under the influence of alcohol or a controlled substance. Pitts arrested

Driver for violating the zero tolerance law by driving while intoxicated.

Pitts read Driver his *Miranda* rights and the Implied Consent warnings and asked Driver if he would submit to a chemical test of his breath. Driver agreed and took the breath test, which registered .036. Pitts then asked Driver if he remembered the Implied Consent warnings, including that if he refused to take the test then his license will be suspended for one year, and if he would submit to a urine test. Driver made a verbal refusal statement, something to the effect of "No" or "No, I will not." Pitts completed an Alcohol Influence Report. By the question "will you take the test," Pitts noted that Driver agreed to take the breath test by checking the "yes" box and writing "breath" next to it and that Driver refused to take the urine test by checking the "no" box and writing "urine" next to it. Driver did not ask to call an attorney.

Driver testified that after taking the breath test, he thought he had taken all of his tests, but the officers told him that he did not take a urine test, and he did not understand what they meant. Driver also testified that his recollection of the events was somewhat unclear so that he could not remember if he was asked to take a urine test or if he refused to take one. However, Driver acknowledged being advised of the Implied Consent warnings, at least prior to the breath test, and in particular, being advised, "If you refuse to take the test, your driver's license shall immediately be revoked for one year."

Subsequently, the Director served Driver with a Notice of Revocation of Driving Privileges for one year for refusing to submit to a chemical test of his urine pursuant to Section 577.041.[1] Driver peti-tioned for review at the trial court. After a hearing, at which both Pitts and Driver testified, the trial court overruled and set aside the Director's revocation of Driver's driving privileges. The trial court found that the arresting officer had probable cause to arrest Driver for driving while intoxicated but that Driver did not "knowingly refuse" to submit to a urine test. The Director appeals from the judgment.

## Standard of Review

We will affirm the trial court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Discussion

■ In her point on appeal, the Director argues that the trial court erred in reinstating Driver's driving privileges because its judgment is unsupported by substantial evidence and erroneously declares the law in that the uncontroverted evidence shows Driver verbally refused to submit to a urine test and Chapter 577 does not require a knowing refusal.[2]

■ Courts must give effect to the language of a statute as written. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). Courts cannot read into a statute legislative intent contrary to intent made evident by plain language. *Id.* The language of Section 577.041 clearly does not require a knowing refusal. *Lyons v. Director of Revenue*, 36 S.W.3d 409, 411 (Mo.App. E.D.2001). Thus, in finding that Driver did not "knowingly refuse" to submit to a urine test, the trial court demanded a higher evidentiary burden than that stated in the statute, and

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. We note that Driver did not file a Respondent's brief with this Court.

therefore the court erroneously declared the law. *See Id.*

■ Further, the judgment of the trial court is unsupported by substantial evidence. The introduction of evidence on the record in the form of an Alcohol Influence Report and a police officer's narrative is sufficient evidence to establish refusal to submit to a chemical test. *Id.* As described above, such evidence was introduced here. Pitts testified that he advised Driver of the consequences of refusal, both before the breath test request and as a reminder before the urine test request. Driver acknowledged being advised, "If you refuse to take the test, your driver's license shall immediately be revoked for one year." Additionally, Driver's testimony that he did not remember refusing to take the urine test is immaterial to whether or not he refused. *See Berry v. Director of Revenue*, 885 S.W.2d 326, 327 (Mo. banc 1994). Therefore, the only evidence of whether or not Driver refused to submit to a urine test is the Alcohol Influence Report and Pitts's testimony indicating that Driver refused. There is no evidence that Driver was not informed of the consequences for refusing to take a chemical test. Accordingly, the Director produced sufficient evidence of Driver's refusal to submit to a chemical test of his urine.

■ We note that the Implied Consent law, Section 577.020, specifically permits two chemical tests and nothing in the plain language of Section 577.041 requires that the officer read the Implied Consent warnings again prior to requesting a second test. *Baldridge v. Director of Revenue*, 82 S.W.3d 212, 221 (Mo.App. W.D.2002).

We conclude that the Director satisfied the required burden of proof for revocation of Driver's driving privileges. Having done so, the Director had the authority under Section 577.041 to revoke Driver's driving privileges for one year for refusing to submit to a chemical test of his urine. The Director's point on appeal is granted.

*Conclusion*

The judgment of the trial court is reversed and the cause is remanded to the trial court with directions to enter a judgment reinstating the revocation of Driver's driving privileges.

MARY K. HOFF, J., and BOOKER T. SHAW, J., concur.